In the Matter of the Claim of LEON WOOD, Respondent, against QUEEN CITY NEON SIGN Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, May 13, 1953.

*Charles P. Barre* for appellants.

*Nathaniel L. Goldstein, Attorney-General (Roy Wiedersum* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*John Drury* for claimant-respondent.

BERGAN, J. This is a beryllium poisoning case and the main question is whether on the whole record there is proof sufficient to bring the claim within section 40 of the Workmen's Compensation Law. The employee, Dorothy Wood, died in 1951 as a result of beryllium poisoning, but this is a claim instituted while she was living, now prosecuted by her husband, for disability benefits due to the occupational disease. The husband claimant is also the employer; but the adversity of interest seems adequately maintained by the carrier appellant.

Decedent and her husband both began working in 1937 as employees of the Queen City Neon Sign Co. The business was then owned by another relative. Decedent performed clerical duties. For about four hours a day she also coated glass tubes with a fluorescent substance containing beryllium.

In November, 1940, decedent's husband bought the business. Whether decedent was then working in the business or left it shortly after is not important; there was about that period a break in her employment. She returned to employment in November, 1942. Her husband then owned the business. She continued until her disablement, which the board has found occurred in December, 1944.

Medical opinion in 1944 as to the cause of her disability was uncertain. She lost weight and had chest symptoms which could be attributable to other diseases than beryllium poisoning and there is proof in the record which the board was free to accept that it was not until June, 1948, that the disease which had disabled her in December, 1944, was diagnosed as due to beryllium.

Very promptly after this diagnosis the employer filed with the board a " report of injury " which described an occupational disease occurring in 1939–1940. The employer himself, as the husband of the decedent, learned promptly of this diagnosis; and there is some proof that he suspected such a cause of her disability earlier. It is not troublesome on such a record to say that the board was justified in excusing the giving of written notice of the disease within ninety days of knowledge

of its nature as required by section 45. Actual notice was here treated as the equivalent of the statutory requirement for written notice.

Since the summer of 1947, about a year before the diagnosis of the cause of disability was made, the husband employer had been paying the medical bills out of business funds. Prior to that time he testified he had been paying the bills personally. After 1947 he said he charged them to the business because he realized that his wife's illness " was something connected with " the occupation.

We see three main problems: (a) whether there is substantial evidence as the board has found to show exposure of the decedent to the occupational disease from the time she resumed work in November, 1942; (b) whether the amendments to sections 28 and 40 (L. 1947, ch. 624) effective July 1, 1947, which permit the filing of a claim for beryllium disease to be made within ninety days after knowledge is acquired that it was due to the employment, operate to affect this claim; and (c) assuming that it is not operative, did the medical services furnished constitute an advance payment of compensation which would waive the time limitations for filing claims under section 28.

The closest problem is presented by the appellant's argument that there is no substantial evidence to show exposure by the decedent to beryllium after she returned to work in 1942. This is important because section 40 bars a claim for occupational disease where disability does not occur within twelve months after the disease is contracted unless the employee " contracted the disease in the same employment with the same employer by whom he was employed at the time of his disablement ", and the employment was continuous between contracting the disease and disability.

Thus it was necessary to prove that decedent was exposed to the disease during the continuance of her last employment. This would not be limited to twelve months before the disability of December, 1944, so long as it could be found she was in the same employment with the same employer. But this could extend the time of contracting the disease only back to the beginning period when she returned to work in November, 1942. The business was then owned by her husband and from that time on continuously until her disability he was her employer.

Appellants argue that all the substantial evidence points to their assertion that the disease was contracted earlier than

1942, and at a time when decedent worked for the earlier owner of the business and before her husband, as her last employer, acquired it.

It becomes important to examine what the record shows in respect of exposure to beryllium between November, 1942, and December, 1944. Decedent herself testified on her own claim. She was asked on cross-examination a question which included the statement that she did coating of tubing " only in 1939 and 1940 ". To this she gave a categorical affirmative answer.

The next question inquired directly whether she did any coating after 1940. She said: " No. I don't believe so." She was then asked whether there was " no exposure at all after 1940 ". She said: " I couldn't recall. I don't know exactly. It seems so many years and everything bawls me up." There is another answer in which she said categorically that she did not do any coating of tubes " in this place your husband's company is in now ". This was said to be in 1941 or 1942.

There is other proof suggesting that beryllium exposure did not occur after she returned to work; and the report of injury of the employer on which the board relies here for knowledge of the condition gives the " Date of accident " as " 1939–40 ".

The decedent appears to have been acutely ill when she testified, and the record shows that it was necessary for her at the hearing to have frequent recourse to oxygen. The weight to be given to her identification of dates and sequences in the light of her confessed difficulty in remembering a period she regarded as long ago was thus peculiarly for the board. It would be hard to say as a matter of law, as appellant argues, that what she as claimant then said as to the facts is necessarily conclusive.

The employer appellant testified unequivocally that the decedent " worked with beryllium " until November, 1944, just before her disablement. Ordinarily an admission of this kind by an employer would be the end of the controversy; but the employer here was also the husband of the decedent, and, in view of his personal interest, he was certainly not in the usual position of an employer in making this kind of a strong admission against interest.

He had, perhaps a stronger personal interest to sustain the claim than to defeat it. On the other hand he was not disqualified as a witness and when his testimony is examined in its entirety we find no good reason either why it had to be rejected as a matter of law, or why it must necessarily have been regarded as improbable.

The assistant manager of the business was Pearl M. Wood. She is the mother of the husband. She testified that she was acquainted with the course of the business and that decedent to " her own knowledge " worked " with beryllium " up to November, 1944. This was weakened somewhat by her admitted limitations on observation. A letter was also sent to the board by this witness subsequent to the report of injury, in which the statement is made on behalf of the corporation which succeeded in the business that the decedent " was employed here during the period from 1937 to 1943 ", that " we are informed " that her illness " is due to the Beryllium content found in the coating material we used ".

The medical opinion as to causation was based on exposure during the period in question as well as the earlier period. We think in the end the evidentiary problem of whether there was exposure during the period in which the decedent worked for her husband becomes one of weight. If we think that we must affirm the board's findings on this aspect of the case.

As to the second question raised, whether the amendments to section 40, effective July 1, 1947, permitting the filing of a beryllium claim within ninety days after knowledge has been acquired that disability was due to the employment is operative in this case, we think the board was right in finding that it was operative. Here the exposure had occurred; the occupational disease had caused a disability before the statute became effective. Knowledge of the nature of the disease and its relationship to employment was not acquired until a year later.

The amendment affects a remedy and in the view that has usually been taken of changes of this sort it is to be regarded as procedural. (*Hession* v. *Sari Corp.*, 283 N. Y. 262; *Matter of Metzger* v. *Metzger Press*, 301 N. Y. 781.) The decision in *Matter of Schmidt* v. *Wolf Contr. Co.* (295 N. Y. 748) carries the theory of procedural change much farther than the case now before us requires. We think the benefit of the 1947 amendment was available to claimant.

Finally the payment of medical expenses out of the firm's funds as soon as there was any impression in the employer's mind that the illness might be associated with the occupation and especially after 1948 when this knowledge was brought home clearly to the employer could be held by the board to constitute advance payment of compensation under abundant authority. Under section 28, it could be treated by the board as a waiver of the directions of the statute that there be timely filing of

a claim, which, of course, with knowledge of the kind here shown reached also the filing within ninety days after the nature of the illness is known under section 40.

Whether appellants are entitled to reimbursement from the Special Disability Fund beyond 260 weeks under paragraph (ee) of subdivision 8 of section 15 is not before us, since it was not raised before the board. We regard the question as still open for the board's decision upon proper application.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Decision and award unanimously affirmed, with costs to the Workmen's Compensation Board.