In the Matter of the Claim of PAUL McCANN, Respondent, against WALSH CONSTRUCTION Co. et al., Appellants, and SPECIAL FUNDS CONSERVATION COMMITTEE, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, July 2, 1953.

*Bernard Katzen, Victor Fiddler* and *George J. Hayes* for appellants.

*Nathaniel L. Goldstein, Attorney-General (Roy Wiedersum* and *Harry Pastor* of counsel), for the Workmen's Compensation Board, respondent.

*William Doblin* for claimant-respondent.

*John M. Cullen* for Special Funds, respondent.

HALPERN, J. This appeal brings up for consideration the question of the construction and constitutionality of the amendments to the Workmen's Compensation Law with respect to " compressed air illness " adopted in 1946 and 1947 (L. 1946, ch. 642; L. 1947, ch. 624).

The claimant-respondent had been employed from 1911 to 1938 by various construction companies upon jobs requiring him to work in compressed air. His last exposure to compressed air was in the period from July 1, 1938, to December 25, 1938, when he was employed by the employer appellant, Walsh Construction Co., during the construction of the Queens Midtown Tunnel. While at work on this job, the claimant complained of pain in his right hip and shoulder. This pain persisted from then on and the claimant worked only intermittently thereafter, at jobs not involving exposure to compressed air.

The claimant's condition was not diagnosed as caisson disease, a disease due to exposure to compressed air, until December 11, 1950, when he was found to be suffering from

osteoarthritis of the right shoulder, right elbow and right hip, due to caisson disease. He was informed of the nature of his illness on that day and, promptly thereafter, on December 15, 1950, he filed a claim for compensation for disablement due to caisson disease.

The referee fixed December 11, 1950, the date on which the claimant was first treated for the disease, as the date of the claimant's disablement. Section 42 of the Workmen's Compensation Law authorizes the board to determine the date of disablement and, under section 38 of the Workmen's Compensation Law, the date of disablement so determined is treated as the date of " the happening of an accident " for the purpose of the compensation law.

There is no controversy in this case as to the date of disablement, the appellant employer having itself asserted before the referee that " the disablement date in this case is December 11, 1950."

At the time of the claimant's last exposure to compressed air in 1938, section 40 of the Workmen's Compensation Law provided that, except in the case of an employee who had contracted an occupational disease " in the same employment with the same employer by whom he was employed at the time of his disablement and who had continued in the same employment with the same employer from the time of contracting the disease up to the time of his disablement thereby ", no employee was entitled to compensation for disablement caused by an occupational disease unless the disease was contracted " within the twelve months previous to the date of disablement ". (L. 1931, ch. 344.) Under the statute as it then read, an employee who had contracted an occupational disease and had then left his employer, would be barred from claiming compensation if disablement did not occur within twelve months after the contracting of the disease.

However, in 1946, the Legislature recognized that it was unjust to apply this general rule to a disease like caisson disease which was of a slow-starting or insidious nature; very often, more than twelve months elapsed after the contraction of the disease before its presence was known or apparent. The Legislature therefore amended section 40 of the Workmen's Compensation Law in 1946 to exclude " compressed air illness " from the twelve months' provision of the statute. The pertinent portion of the statute as amended read: " The time limit for contraction of the disease prescribed by this section shall not bar compensation in the case of an employee *who contracted*

*compressed air illness, or its sequelae* ". (Italics supplied.) (L. 1946, ch. 642, eff. July 1, 1946.) Section 28 of the Workmen's Compensation Law fixing a time limit of one year for the filing of claims for compensation remained unchanged, notwithstanding the 1946 amendment to section 40. This created an unsatisfactory situation since the purpose of the amendment might be defeated by the claimant's ignorance of the nature of the disease from which he suffered and his failure to file a claim within one year (as section 28 then read) after disablement.

In 1947, both sections 28 and 40 were comprehensively amended (L. 1947, ch. 624, eff. July 1, 1947). The amendment to section 40, adopted in 1946, was retained, although its position in the text was changed and certain other slow-starting diseases causing latent or delayed pathological changes were also excluded from the time limit provided by section 40, and the following sentence was added at the end of the section: " Neither shall the right to compensation in such cases be barred by the failure of the employee or his dependents to file a claim within the two-year period prescribed by section twenty-eight, provided such claim shall be filed after such period of two years, within ninety days after disablement and after knowledge that the disease is or was due to the nature of the employment."

A similar provision was inserted in section 28, by the same chapter of the Laws of 1947. (The one-year period for filing claims generally had been extended to two years by L. 1947, ch. 77.) Section 45, dealing with notice to the employer, was also amended by chapter 624 of the Laws of 1947, so as to provide that the notice could be given " within ninety days after the disablement or after knowledge that the disease is due to the nature of the employment, whichever is the later date."

The first question raised by the appellants is whether the amendments apply to a case in which the disablement occurred after the effective date of the amendments but the disablement was the result of a disease contracted before that date.

The Workmen's Compensation Board answered this question in the affirmative; we think that this was plainly correct. The Legislature clearly intended that the amendments should apply to all cases of disablement occurring after the effective date of the amendments. Under the statutory scheme, the date of the disablement is treated as the date of the happening of an accident for the purpose of setting in motion the machinery of compensation under the statute. Any disablement occurring after the enactment of the amendments therefore constituted the

happening of an accident on the day of the disablement, the right to an award for which would be governed by the statute in force at that time. There is nothing in the statute to indicate that the Legislature intended that such cases should be governed by the statute in force at the time of the contracting of the disease, rather than by the amended statute.[*]

Upon this analysis, it is apparent that the amendments are given only a prospective, not a retrospective, effect in holding that claimants who suffered disablement subsequent to the effective date of the amendments are entitled to the benefit of those amendments in the making and enforcement of their claims.

This analysis also bears upon the constitutional question raised by the appellants. The Legislature has not here attempted to revive a claim which was once complete and enforcible but which was subsequently barred by the Statute of Limitations. In occupational disease cases, there is no right to claim compensation until disablement occurs; the claim then accrues for the first time; the Legislature has merely prescribed, prior to the time when a disablement occurred, the time limitations which are to govern the claim for compensation for the disablement.

We thus have here a stronger case in support of the validity of the statute than we would have if the Legislature had undertaken to lift the bar of the Statute of Limitations after it had run against a claim which had fully accrued. However, even if we regard the amendments as the equivalent of a statutory revival of a barred cause of action, we find no constitutional infirmity in the amendments.

It is the settled law, so far as the guarantee of due process under the Federal Constitution is concerned, that statutes reviving barred causes of action, with an exception not relevant here, are valid and constitutional. It was so decided by the United States Supreme Court in 1885, in *Campbell* v. *Holt* (115 U. S. 620). The question arose again sixty years later, in 1945, in *Chase Securities Corp.* v. *Donaldson* (325 U. S. 304) and Mr. Justice JACKSON speaking for a unanimous court said: "In *Campbell* v. *Holt, supra,* this Court held that where lapse of time has not invested a party with title to real or personal property, the state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even

---

[*] The amendment to section 28 in 1947, insofar as it extended the time for the filing of claims for the occupational diseases enumerated therein, was held to apply to a disablement which had occurred prior to the effective date of the amendment in *Matter of Wood* v. *Queen City Sign Co.* (282 App. Div. 106).

after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar. This has long stood as a statement of the law of the Fourteenth Amendment ". (Pp. 311–312.) The appellant in the *Chase Securities* case asked the court to reconsider and overrule *Campbell* v. *Holt* but the court declined to do so, pointing out that, while " The abstract logic of the distinction between substantive rights and remedial or procedural rights may not be clear-cut," the court had adopted " as a working hypothesis, as a matter of constitutional law, the view that statutes of limitation go to matters of remedy, not to destruction of fundamental rights " and the court concluded " it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment." (Pp. 314, 316.)

When we come to the question of the due process provision of the State Constitution, we have greater difficulty. While many State courts have followed *Campbell* v. *Holt* in the construction of the due process clause or similar provisions of their State Constitutions, many others have declined to do so and have interpreted their State Constitutions as generally forbidding the statutory revival of barred causes of action. (See cases cited in *Chase Securities Corp.* v. *Donaldson, supra,* pp. 312–313.) The courts of each State are, of course, free to adopt their own construction of the State Constitution, even though the language under consideration may be identical with that of the Federal Constitution (*Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271, 317; *New York City* v. *Central Sav. Bank,* 306 U. S. 661, denying certiorari in *Central Sav. Bank* v. *City of New York,* 279 N. Y. 266 and 280 N. Y. 9; *Minnesota* v. *National Tea Co.,* 309 U. S. 551, 556–557).

The New York Court of Appeals has chosen a middle course between the course of those States which have refused to follow *Campell* v. *Holt* and those which have accepted its reasoning. While declining " to adopt the broad and unqualified view that a State may constitutionally revive *any* personal cause of action, whatever the circumstances ", the court held " that the Legislature may constitutionally revive a personal cause of action where the circumstances are exceptional and are such as to satisfy the court that serious injustice would result to plaintiffs not guilty of any fault if the intention of the Legislature were not effectuated " (*Gallewski* v. *Hentz & Co.,* 301 N. Y. 164, 173, 174, following *Robinson* v. *Robins Dry Dock & Repair Co.,* 238 N. Y. 271).

Applying this test to the statute before us, there can be no doubt as to its constitutionality under the State Constitution. This is a classic instance of the granting of legislative relief in a situation where the arbitrary application of the Statute of Limitations would work injustice. As the Legislature recognized, in the case of a disease of an insidious character, the effects of which might be latent or long delayed, the right to compensation might be barred by the operation of the Statute of Limitations even before the claimant was aware of the fact that he had the disease. In these circumstances, the Legislature did no more than to comply with the simple demands of justice in relieving innocent claimants of the effect of the statutory time limitations which would otherwise bar their right to compensation. The Constitution " does not invalidate legislation lifting the bar [of the Statute of Limitations] where the circumstances are such as to indicate the presence of a strong moral obligation to do so " (*Gallewski* v. *Hentz & Co.,* 276 App. Div. 219, 222, VAN VOORHIS, J., affd. 301 N. Y. 164).

We therefore conclude that there was no violation of either the State or Federal Constitutions in the enactment of the amendments.

The remaining contention of the appellants is that the award should have been made against the Fund for Reopened Cases under section 25-a of the Workmen's Compensation Law. This contention is without merit. This fund deals, as its title indicates, with reopened cases; it has no connection with claims newly made under a special statute which allows them to be made despite the lapse of time. Section 25-a applies only if more than seven years had elapsed from the date of the accident (here, this means the disablement). No such period had elapsed in this case. The claim was filed within a few days after the disablement.

The decision and award of the Workmen's Compensation Board should be affirmed, with costs to the board.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board.