In the Matter of the Claim of EARL HOOPER, Respondent, *v.* BETHLEHEM STEEL COMPANY, Appellant, and SPECIAL FUND FOR REOPENED CASES, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 20, 1961.

*Phillips, Mahoney, Lytle, Yorkey & Letchworth (Solon J. Stone* and *Peter B. Schreier* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General,* for Workmen's Compensation Board, respondent.

*John M. Cullen* for Special Fund for Reopened Cases, respondent.

BERGAN, P. J. Claimant had a recurrent bilateral hernia in July, 1945 which an examining physician for the self-insured employer described in his report as " occupational ", and which the employer's report to the Workmen's Compensation Board described in the same way.

A hearing was held August 28, 1945; the employer did not controvert the claim and the Referee found that claimant suffered an occupational hernia. Claimant had lost no wages; no finding of disablement was then made; and the case was closed by the Referee pending operation " if and when the claimant desires it ".

Almost 15 years later claimant applied to reopen his case upon the statement he then wanted an operation for the hernia. It is clear he had suffered no diminution of wages due to the condition in the intervening period.

Two operations were performed, the first on March 9, 1960; the second on April 13, 1960. The board has found that the date of the first operation, March 9, 1960, was the date of disablement. This finding is in exact conformity with the statutory definition of "disablement" for occupational disease. "Disablement" is treated under the statute as the happening of an accident in an occupational disease claim (Workmen's Compensation Law, § 38) and "injury" means "accidental injury" (§ 2, subd. 7). The reason for this policy is very clear: many industrial employees suffer diseases of more or less gravity due to occupation, but continue work. A disease, unlike an accident due to an event particularized in time and place, often does not manifest itself until some external event occurs; and to avoid endless disputes about its time of occurrence, the statute provides that disablement is the "state of being disabled from earning full wages" (§ 37, subd. 1). Moreover, even if a disease is established and known, the statutory definition as a matter of legislative policy must prevail; it is not equated to an accident until there is a wage loss.

A claimant does not become disabled, i.e., the "accidental injury" equated by the statute to "disablement", does not happen until the day he suffers some diminution of wages which may be later or never. The rule that the statute in this definition is to be followed literally is very well settled in this court. (*Matter of Muniak* v. *ACF Ind.*, 6 A D 2d 923, affd. on reargument 7 A D 2d 258; *Matter of Taratino* v. *Em Cee Fashions*, 9 A D 2d 810; *Matter of Gelband* v. *Queen Mary Bag & Luggage Shops*, 11 A D 2d 571; *Matter of Harris* v. *Silver Creek Precision Corp.*, 13 A D 2d 859.)

The board has found, since the "disablement" did not occur until claimant underwent his first operation for the disease on March 9, 1960, because there was until then no diminution of wages, that this was the "date of the injury" within the language of section 25-a and that therefore the employer and not the Special Fund for Reopened Cases was responsible for the resulting compensation claim.

On the statutory language itself this seems a consistent resolution of the issue. If, as section 38 says, disablement is treated as the happening of an accident; and if, as the definition of section 2 provides, an injury means an "accidental injury", it seems clear that "date of the injury" in section 25-a means,

when it comes to an occupational disease case, the date the claimant first suffers some diminution of wages due to the disease.

The contextual words of section 25-a " and claim for compensation previously has been disallowed or claim has been otherwise disposed of without an award of compensation " are not words to be read in a vacuum. They are tied exactly into a date; and that date is the " date of the injury " which, of course, can mean only accidental injury and in occupational disease its equivalent, a diminution of wages.

It is clear, too, that the claim could not have been " allowed " or disposed of with " an award of compensation " until there had been a diminution of wages, and, therefore, the rest of the contextual clauses of section 25-a " claim for compensation previously has been disallowed or claim has been otherwise disposed of without an award of compensation " are irrelevant to an occupational disease claim which has yet not matured into a right to compensation.

As the court noted in *Matter of McCann* v. *Walsh Constr. Co.* (282 App. Div. 444, 448, affd. 306 N. Y. 904) when the disablement occurs " the claim then accrues for the first time ".

The statutory definition ought not be further fragmented to find a difference in time of maturity of a claim for occupational disease between the phrase " date of the injury " in section 25-a, and the date of accident under section 38. The Legislature could not have intended such a distinction which would cause further confusion and litigation.

The general policy to treat the actual diminution of wages as the occurrence of the accident and its consequent injury ought to be applied for all purposes alike and an exception should not be carved out for the words " date of the injury " in section 25-a. To apply the same definition of time of accrual of a claim for occupational disease for all such purposes is the sense in which our discussion in *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (2 A D 2d 946) ought to be read.

The decision of the Workmen's Compensation Board should be affirmed, with costs to the Special Fund for Reopened Cases.

HERLIHY, J. (dissenting). In July, 1945, a routine physical examination by the appellant disclosed that the claimant employee suffered from a recurrent bilateral hernia which the appellant in its report of injury and the attending physician in his report designated as " occupational ".

A board physician confirmed the hernial condition at a hearing held August 28, 1945. The appellant did not controvert the

claim and the claimant at the hearing said he did not yet want an operation. The Referee then found that claimant had developed a recurrence of the bilateral hernias; that it was caused by his occupation; and that claimant had lost no time as the result of his condition. The case was " closed pending operation for recurrent bilateral hernias, if and when the claimant desires it. * * * If you wait more than seven years after the date of recurrence, you must come back and ask our permission." Claimant never lost any work because of his condition but on February 8, 1960, he made " application for reopening of claim, more than seven years after accident " in order to have the operation. Two operations were thereafter performed, March 9, 1960 and April 13, 1960.

At a hearing conducted May 25, 1960, the Referee fixed the *date of disablement as March 9, 1960*. On the basis of this date of disablement an award was made against appellant and the Special Fund was discharged from liability under section 25-a. The board affirmed this determination.

This section of the Workmen's Compensation Law, as applicable *to this case, provides: " (1) [A]fter a lapse of seven years from the date of the *injury* or death *and* a claim for compensation previously has been disallowed *or* claim has been otherwise disposed of without an award of compensation " any subsequent award should be against the Special Fund. (Emphasis supplied.)

The only issue in this case is whether in situations involving hernias the *injury* occurs upon *statutory disablement* or the date of the *medical disability* for purposes of computing the seven-year time limitation under section 25-a.

In *Matter of Casey* v. *Hinkle Iron Works* (299 N. Y. 382, 385) the Court of Appeals said: " Liability of the Fund for Reopened Cases is to be conditioned upon the lapse of time as provided by the statute. It may be imposed only in a case which has been closed and is reopened by fresh application * * * [I]ts [Fund] purpose is patent: that the risk of claims recurring beyond the statutory period shall be borne by all."

The case of *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (2 A D 2d 946 [1956]) held that where the occupational disease of silicosis was concerned, the date of injury in a death case was the date of total disability. This, however, was different from the present case in that it does not appear that prior to the death the " claim has been otherwise disposed of without an award of compensation."

The respondent, Special Fund, contends that the seven-year period must always be computed from the date of disablement.

Such a construction of the statute, however, might render section 25-a (1) meaningless as to all occupational disease cases even though such compensable disease is established by a hearing — such as here — some 14½ years prior to actual statutory disability.

The section is intended to apply to all situations where there has been (1) a previous disallowance of the claim or (2) a disposition of the claim without compensation. Such, of course, must be coupled with either an *injury* or *death*. In considering what is an *injury, where a claim has been previously made and disposed of*, there is no necessity to apply the so-called *statutory disablement* test. If the intent of the statute as stated in the *Casey* case (*supra*) is to be carried out, then the seven-year time limitation must be deemed to run from the date of the known illness *where a claim has been previously disposed of without an award of compensation.*

The respondent, Special Fund, however, argues that such a disposition of the case is contrary to the case of *Matter of Muniak* v. *ACF Ind.* (7 A D 2d 258 [1959]). An analysis of the *Muniak* case, however, shows that it is inapplicable to the present case. *Muniak* only decides that an award may not be made by the board in the case of hernias until such time as the employee suffers an inability to continue to earn full wages. The case did not in any way deal with section 25-a and is inapplicable to the present case. However, the *Muniak* case does point out the difference between a *medical disability* and a *statutory disability*. The case only decided that for the purpose of section 37 of the Workmen's Compensation Law a person afflicted with hernias is not disabled until he loses his ability to earn full wages. This clearly does not deal with the time limitation under section 25-a of the Workmen's Compensation Law.

It is not disputed that the first hearing which established the hernias as a medical disability and his right to compensation — except the employee elected not to take it — was held more than seven years prior to the application to reopen, which brings the facts of this case within the purview of the Special Fund section.

In occupational disease cases, in endeavoring to protect the rights of the employee, the date of disablement — loss of earning power — has been held to constitute the date of accident, for example: an employee, suffering knowingly from caisson disease, continues to work but subsequently becomes disabled from the disease, is protected by such interpretation. But this determination is in no way associated with the rights of the employer-carrier and the Special Fund. It is a fallacious argument to

hold that the Statute of Limitations involving these parties is governed by the employee's date of disablement under section 37. The date that starts the statute running should be the same in both accident and occupational diseases, to wit, the date of the hearing at which it is determined the employee has a medical disability. Whether the employee actually receives compensation benefits at that time is immaterial in construing the statutory time limitation pursuant to section 25-a. The employee is not governed or controlled by this section and his election as to when to take compensation should not be decisive of the passage of time which governs the rights of the employer and the Special Fund.

In *Matter of Kaplan* v. *Wirth & Birnbaum* (301 N. Y. 121) a hernia case, the court, in discussing the liability of the Special Fund for Reopened Cases, stated (p. 126): "It follows that, after the lapse of seven years, the Special Fund remains liable in all other cases where the claim ' has been disallowed or * * * otherwise disposed of without an award of compensation ' (Workmen's Compensation Law, § 25-a, subd. 1), and such liability continues until the ' lapse of eighteen years from the date of injury ' and also ' eight years from the date of the last payment of compensation ' (Workmen's Compensation Law, § 25-a, subd. 6; last sentence of § 123). *By way of illustration, such cases might arise when a claim is closed out pending claimant's request for an operation, or for some other reason a merely technical disposition is made.*" (Emphasis supplied.)

In this case, during the 14½ years from the establishment of the medical disability to the date of disablement, the carrier furnished to the claimant medical appliances — trusses — and while it was not considered a payment of compensation, it certainly was the assumption of a financial obligation by the carrier sufficient in itself to commence the running of the time limitation in section 25-a. (See *Matter of Casey* v. *Hinkle Iron Works,* 299 N. Y. 382, *supra*; *Matter of Youngelman* v. *City of New York,* 10 A D 2d 173.)

The majority would take the date of disablement, which controlled the rights of the employee pursuant to sections 37 and 38, and apply it for all purposes under the law, without exception.

In my opinion, such an interpretation is too restrictive and contrary to the intent of the Legislature and inequitable.

The decision of the Workmen's Compensation Board should be reversed and the matter remitted.

REYNOLDS and TAYLOR, JJ., concur with BERGAN, P. J.; HERLIHY, J., dissents in an opinion in which COON, J., concurs.

Decision affirmed, with costs to Special Fund for Reopened Cases.