OPINION OF THE COURT
William F. Mastro, J.
In a proceeding pursuant to section 50-e of the General Municipal Law, petitioners request leave to serve late notices of claim in connection with their proposed causes of action for personal injuries allegedly resulting from the latent effect of exposure to compressed air while working on a sewer construction project for the City of New York.
The application is granted.[1]
Petitioners are a group of miners who formerly worked on a portion of a sewer construction project beneath Hylan Boulevard in the Borough of Staten Island commonly known as the Hylan Boulevard Tunnel. They allege, in sum and substance, that during the course of their employment, and more specifically between the months of November 1991 and February 1992, they were required to work in a compressed air environment that, when combined, inter alia, with the inadequate periods of decompression to which they were negligently subjected, caused them to develop “caisson disease,” a “slow-starting” type of “compressed air illness” (Matter of McCann v Walsh Constr. Co., 282 App Div 444, 446, affd 306 NY 904). In most cases, this was the petitioners’ only exposure to a compressed air environment. Petitioners further allege that they failed to discover their respective conditions until various dates in 1998, when, at the suggestion of co-workers, they consulted a doctor (Dr. Robert Zaretsky) regarding their aches and pains, and were diagnosed as suffering from caisson disease. This proceeding, inter alia, for leave to serve a late notice of claim was commenced within one year and 20 days thereafter.
*698 In opposition, respondent maintains, initially, that the injuries complained of are not the result of exposure to a toxic substance as contemplated by the statute on which petitioners rely (CPLR 214-c) and further, even if they are, that petitioners must be deemed to have sustained their injuries, at the latest, on the date of their most recent exposure to compressed air in or about February of 1992, and that the present proceeding is therefore untimely.
The court disagrees.
As to respondent’s initial contention, the court rejects categorically respondent’s suggestion that exposure to a compressed air environment as herein alleged does not constitute exposure to a toxic substance within the contemplation of CPLR 214-c (see generally, Workers’ Compensation Law § 47 [exposure to the hazards of compressed air “presumed * * * to be injurious exposure”]; Prego v City of New York, 147 AD2d 165, 170; see also, Workers’ Compensation Law § 28; Matter of McCann v Walsh Constr. Co., 282 App Div 444, supra). The cases of Rochester Gas & Elec. Corp. v City of Rochester (258 AD2d 945 [involying exposure to water]) and Martzloff v City of New York (238 AD2d 115 [involving exposure to the sound of gunfire]) are distinguishable on their facts and do not compel a contrary result. Moreover, to whatever extent the “ingestion of a [toxic] substance” may be seen as crucial to the applicability of CPLR 214-c (Martzloff v City of New York, supra, at 116), it is worthy of note that caisson disease occurs as a result of the increased absorption of nitrogen by the body when exposed to a compressed air environment followed by improper decompression. Thus viewed, the case at bar is readily distinguishable from Noce v Wilmorite, Inc. (166 Misc 2d 103 [Sup Ct, Monroe County 1995] [involving exposure to “cold air”]).
As to timeliness, at the outset this issue is governed by the provisions of section 50-e of the General Municipal Law, which provide, in pertinent part, that a notice of claim must be served within 90 days after the cause of action accrues. However, the court, upon application, may extend the time to serve a notice of claim for the duration of the applicable Statute of Limitations (see, General Municipal Law § 50-e [5]), so that the period during which an extension may be granted is coextensive with the Statute of Limitations governing the underlying claim (see, Matter of Daniel J. v New York City Health & Hosps. Corp., 77 NY2d 630, 633).
In causes of action, as here, to recover monetary damages for personal injuries allegedly caused by the latent effects of *699 exposure to toxic substances, the accrual date is determined by the discovery rule set forth in CPLR 214-c. As the Appellate Division observed in Annunziato v City of New York (224 AD2d 31, 35): “Prior to the enactment of CPLR 214-c in 1986, the Statute of Limitations commenced to run upon the date of exposure to the harmful substance, even though the ill effects of such exposure were not manifested until years later. The harshness of this rule was remedied by CPLR 214-c, which provides that the cause of action accrues, and the Statute of Limitations commences to run, upon discovery of the injury itself (see, Rothstein v Tennessee Gas Pipeline Co., 87 NY2d 90; Jensen v General Elec. Co., 82 NY2d 77). Thus, the three-year Statute of Limitations for personal injury actions commences to run upon the date of discovery of the injury or ‘the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier’ (CPLR 214-c [2]).” Similarly, where, as here, General Municipal Law §§ 50-e and 50-i are applicable because the claim is asserted against a municipality, the Statute of Limitations of one year and 90 days is measured from the date of discovery of the injury or the date when, through the exercise of reasonable diligence, the injury should have been discovered, whichever is earlier (CPLR 214-c [3]).
Under CPLR 214-c, discovery of an injury occurs “when the injured party discovers the primary condition on which the claim is based” (Matter of New York County DES Litig., 89 NY2d 506, 509), i.e., “discovery of the manifestations or symptoms of the latent disease that the harmful substance produced” (supra, at 514), which may include actually being diagnosed as suffering from a particular disease (see, Pompa v Burroughs Wellcome Co., 259 AD2d 18, 22; see also, Hedlund v County of Tompkins, 235 AD2d 980, 982, lv denied 90 NY2d 808; Sweeney v General Print., 210 AD2d 865, 866, lv denied 85 NY2d 808). Notably, an injury, in this context, refers to “an actual illness, physical condition or other similarly discoverable objective manifestation of the damage caused by previous exposure to an injurious substance” (Sweeney v General Print., supra, at 865-866), and not the more complex concept of “discovery of both the condition and the nonorganic etiology of that condition” (Matter of New York County DES Litig., supra, at 514; see, Oeffler v Miles, Inc., 241 AD2d 822, 825). In short, “[a] 11 that is necessary to start the limitations period is that plaintiff be aware of the primary condition for which damages are sought” (Whitney v Quaker Chem. Corp., 90 NY2d 845, 847 *700 [emphasis supplied]; accord, Pearl v Eli Lilly & Co., 262 AD2d 106, lv denied 94 NY2d 752).
Applying these principles to the present case, it appears for the purposes of this application that the earliest date on which it can be conclusively determined that any of the petitioners discovered or, in the exercise of reasonable diligence, could have discovered the primary condition on which their claims are based was January 5, 1998, when the first of them was diagnosed as suffering from caisson disease (see, Matter of New York County DES Litig., supra, at 514, n 4; Sweeney v General Print., supra, at 866). Accordingly, the present application, commenced within one year and 90 days thereof, is timely (General Municipal Law § 50-e [5]; cf., Pompa v Burroughs Wellcome Co., supra, at 23; Bimbo v Chromalloy Am. Corp., 226 AD2d 812, 815; see also, Scherrer v Time Equities, 218 AD2d 116, 124; Roman v Radio Frequency Co., 207 AD2d 1012; see generally, City of New York v Lead Indus. Assn., 190 AD2d 173, 177).
In reaching this determination, the court notes that it appears without contradiction from the supporting affidavits of the individual petitioners that the symptoms which they experienced (generalized aches, pains and stiffness in their elbows, hips, shoulders and knees) did not differ in kind, degree, intensity or location from those experienced before, during and after their work on the Hylan Boulevard Tunnel; that they never lost any time from work “at that time or thereafter;” that they had themselves tested for caisson disease only at the suggestion of identified co-workers; that the diagnosing physician (Dr. Zaretsky) was the first doctor that any of them had consulted with regard to the aforementioned aches and pains; and that they are otherwise in “good physical condition.” In addition, the uncontroverted affidavits of petitioners’ medical and engineering experts demonstrate (at least for the purposes of this motion) that it is not uncommon for persons who develop caisson disease to remain asymptomatic; that the condition develops “silently”, after exposure to compressed air followed by improper decompression; that the condition becomes symptomatic over time;[2] that each of the petitioners remains largely asymptomatic; and that, in the absence of knowledge that they had contracted caisson disease, petitioners’ varying degrees of joint pain and soreness were under *701 standably attributed to the aches and pains associated with their demanding physical labor. Under these circumstances, it cannot be said as a matter of law that petitioners became or, in the exercise of reasonable diligence, should have become aware of the primary condition for which damages are now sought prior to the time of their diagnosis with caisson disease on varying dates in 1998 (see, Whitney v Quaker Chem. Corp., 90 NY2d 845, 847, supra; Pearl v Eli Lilly & Co., 262 AD2d 106, supra; see also, Pompa v Burroughs Wellcome Co., 259 AD2d 18, 22-23, supra; Bimbo v Chromalloy Am. Corp., 226 AD2d 812, 814-815, supra). To the extent that petitioners may be seen, in retrospect, to have exhibited some untoward effects of their alleged exposure to compressed air at some earlier time, it is the opinion of this court based on the papers presently before it that these “early symptoms [were] too isolated or inconsequential to trigger the running of the Statute of Limitations” (Matter of New York County DES Litig., 89 NY2d 506, 514, n 4, supra; see, O’Halloran v 345 Park Co., 251 AD2d 260, lv dismissed 92 NY2d 1026; cf., Scheidel v A.C. & S., Inc., 258 AD2d 751, 753, lv denied 93 NY2d 809 [plaintiffs contention that decedent’s symptoms were so “generalized and episodal that they did not constitute the primary condition upon which the claim was based” rejected]; Harley v 135 E. 83rd Owners Corp., 238 AD2d 136 [action commenced on or about January 28, 1993 held untimely notwithstanding that plaintiff’s symptoms, which began shortly after exposure to alleged toxic substance in December 1987, were not properly diagnosed until March 1990]; Krogmann v Glens Falls City School Dist., 231 AD2d 76, 78, lv dismissed 91 NY2d 848 [plaintiffs injuries “fully developed and apparent to her and her treating physicians” almost five years prior to the attempted service of a notice of claim]).[3]
Turning to the merits of the proceeding, it is well settled that an application for leave to serve a late notice of claim is addressed to the sound discretion of the court upon consideration of all of the factors set forth in General Municipal Law *702 § 50-e (5) (see, Matter of Guarneri v Town of Oyster Bay, 224 AD2d 695), and calls for striking an “ ‘equitable balance * * * between a public corporation’s reasonable need for prompt notification of claims against it and an injured party’s interest in just compensation’ ” (Heiman v City of New York, 85 AD2d 25, 28, quoting Camarella v East Irondequoit Cent. School Bd., 34 NY2d 139, 142-143). As the Appellate Division observed in Matter of Gerzel v City of New York (117 AD2d 549, 550), “[t]he only legitimate purpose served by section 50-e is to protect the public corporation against spurious claims and to assure it ‘an adequate opportunity * * * to explore the merits of the claim while information is still readily available.’ (Teresta v City of New York, 304 NY 440, 443 [1952]; see also, Matter of Beary v City of Rye, 44 NY2d 398, 412 [1978]).”
In this case, the period of delay occurring after the discovery of petitioners’ injuries has not been extensive, and given the nature of the alleged wrong, even 90 days’ notice would have afforded the respondent little opportunity to inspect a job site which existed some six years previously and has long since been dismantled (see, Baez v New York City Hous. Auth., 182 AD2d 554). Moreover, although the moving papers fail to establish any compelling reason for petitioners’ delay, the opposing papers are equally insufficient to demonstrate that the respondent will be actually prejudiced by the late filing (see, Matter of Frazzetta v Rondout Val. Cent. School Dist., 166 AD2d 843, 844). In fact, while respondent claims that its investigative efforts will be frustrated, it does not appear from the opposing papers that any investigation has yet been attempted (see, Zinnamon v City of New York, 197 AD2d 618).
The court has considered respondent’s remaining objections to the proposed notices of claim and finds them to be without merit.
Accordingly, it is ordered that petitioners’ application for leave to serve late notices of claim is granted; and it is further ordered that the notices of claim shall be deemed timely served nunc pro tunc with the service, upon respondent, of a copy of this order, with notice of entry thereof; and it is further ordered that the summons and verified complaint annexed to the order to show cause shall be deemed served upon such service; and it is further ordered that respondent’s answer shall be deemed timely if served within 20 days after such service upon it; and it is further ordered that respondent’s time to demand an ex- *703 animation of the claimants pursuant to section 50-h of the General Municipal Law is extended until 90 days following service as herein provided.

. Insofar as it appears from the letter of petitioners’ attorney dated April 23, 1999, the application on behalf of Michael Warfield has been withdrawn.

. See generally, Matter of McCann v Walsh Constr. Co., 282 App Div 444, 446, supra; accord, Matter of Graham v Walsh Constr. Co., 30 AD2d 996, 997, lv denied 23 NY2d 643.

. While cognizant of the uncontroverted nature of petitioners’ evidentiary showing in support of this application, the court is not unmindful of respondent’s relative inability to contest these affidavits where it has not even had the opportunity of examining the claimants pursuant to General Municipal Law § 50-h. Accordingly, fundamental fairness requires that the present determination be without prejudice to the inclusion of any perceived objection to the timeliness of this proposed action in respondent’s answer, if one is required (cf., CPLR 3211 [dl; 3212 [f]).