■ Louis Bimbo et al., Respondents, v Chromalloy American Corporation et al., Appellants, et al., Defendants. [640 NYS2d 623] —Peters, J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Bergerman, J.), entered December 7, 1994 in Rockland County, which, *inter alia*, partially denied certain defendants' motions and cross motions to dismiss the complaint.

Plaintiffs are owners of residential properties located on Pineview Road in the Town of Clarkstown, Rockland County. In July 1978, plaintiff Eleanor S. Venezia telephoned the Rockland County Department of Health (hereinafter RCDH) to complain about a taste and odor in her drinking water. Within days thereafter, RCDH tested the water drawn from her well which ultimately indicated the presence of trichloroethylene (hereinafter TCE), a toxic chemical used primarily as a degreaser. From the date of the original complaint until October 1978, the wells from other Pineview Road residents (hereinafter the Pineview Road wells) were sampled and tested by the State Department of Health laboratory. The results confirmed that TCE was present in each of these wells. On August 17, 1978, the County Commissioner of Health sent a letter to the

residents of Pineview Road notifying them that their well water was contaminated by TCE. He advised them that they should not drink the water or use it for any culinary purpose. In August 1978, RCDH issued a press release and hand-delivered warning notices to plaintiffs notifying them that TCE had been detected in the water from each of their wells and again instructed them to immediately cease its use. A temporary water supply was therefore provided to plaintiffs by an emergency water tank truck supplied by the National Guard and a hydrant was set up by the Spring Valley Water Company.

The source of the contamination remained unknown. RCDH and the State Department of Environmental Conservation (hereinafter DEC) jointly worked to remedy the problem, which ultimately resulted in capping plaintiffs' wells and connecting their homes to a public water supply. During such time, traces of TCE were found in five different locations in the Hackensack River, the source of water for both this area and northern New Jersey. The most dangerous levels, however, were localized in plaintiffs' neighborhood. As a follow-up to DEC's phase I site investigation report, its June 1985 phase II report noted that the connection of plaintiffs' homes to a public water supply had been "an effective remediation measure minimizing the exposure of the Pine View residents to [TCE]". DEC therefore concluded its efforts.

In September 1992, plaintiff Louis Bimbo learned that the Pineview Road wells had been removed from DEC's registry of inactive hazardous waste disposal sites (hereinafter the registry). He further learned that the property adjacent to the Pineview Road wells, owned or occupied by each of defendants at various times, had been placed on the registry. He therefore wrote to Member of Assembly Alexander Gromack for clarification regarding this change in status. Gromack warned Bimbo by letter that the Pineview Road wells were still contaminated and advised that "[s]hould you desire to put a pool on your land, * * * you must take great care not to disturb the ground water table and * * * be sure to consult with the New York State Department of Health". Plaintiffs contend that until they saw this letter, they believed that the TCE contamination was confined to their wells, all no less than 100 feet underground. They further believed that the problem had been remedied by their connection to a public water supply and thus had no reason to suspect that their soil or shallow ground water had been affected.

Plaintiffs commenced this action alleging fraud, prima facie tort, trespass and three causes of action in nuisance to recover

damages for contamination of their wells, groundwater and soil. After joinder of issue, defendants* moved to dismiss the complaint. Supreme Court ultimately dismissed the fraud and prima facie tort causes of action for failure to state a cause of action. The court further dismissed all causes of action that pertained to plaintiffs' wells since such claims were barred by the applicable Statute of Limitations. The court refused, however, to dismiss those claims pertaining to plaintiffs' soil and groundwater contamination, finding that the issue of whether they were barred by the Statute of Limitations presented a mixed question of law and fact more appropriately left for postdiscovery resolution. Defendants appeal the partial denial of their motions.

It is well settled that "[i]n considering a motion to dismiss, the allegations in the complaint must be deemed to be true and accorded every favorable inference" (*Guadagno v Colonial Coop. Ins. Co.*, 101 AD2d 947; *see*, *219 Broadway Corp. v Alexander's, Inc.*, 46 NY2d 506). Here, defendants contend that if plaintiffs' soil and shallow groundwater are contaminated with TCE, such injury is merely an exacerbation of the original injury to their wells. Because it is not a separate injury, the limitations period must be measured from the time plaintiffs first discovered their original injury and, so measured, the current claims would be dismissed as time barred (*see*, CPLR 214-c [2]). Plaintiffs, however, contend that the injury to their soil and shallow groundwater is a separate and distinct injury from the injury to their wells and thus the limitations period must be measured from the time they discovered this injury via Gromack's letter. Noting that CPLR 214-c (2) provides that when there has been this type of contamination, the time period to commence an action to recover damages "shall be computed from the date of discovery of the injury * * * or from the date when through the exercise of reasonable diligence such injury should have been discovered * * * whichever is earlier", we find Supreme Court to have correctly concluded that factual disputes preclude dismissal at this juncture.

Defendants' expert, Thomas Pease, affirmed that well water is a form of groundwater, known as regional groundwater.

---

* Defendants Chromalloy American Corporation and Sequa Corporation jointly moved to dismiss the complaint, as did defendant Alloy Technology International, Inc. Defendant Huls America cross-moved to dismiss the complaint on behalf of itself and defendants Kay-Fries, Inc. and Dynamit Nobel of America, Inc. Defendants Patrick Magee and John Magee also cross-moved to dismiss the complaint. For purposes of clarity, we will collectively refer to those defendants which are appealing as defendants.

Depending upon geological conditions, Pease stated that regional groundwater might not be totally separate from shallow or intermediate groundwater. Thus, he opined that contamination could migrate from one level to another. In a conclusory manner, Pease opines that the contamination discovered in 1978 originated from one source and therefore contaminated all groundwater "from the water table to some unknown depth at least as deep as the 'Pineview Road Wells' ". "Having established that the direct source of well water is groundwater, and that the groundwater contamination near the 'Pineview Road Wells' originated from ground level sources somewhere in the vicinity", Pease concluded that "the contamination discovered in 1978 * * * included any or all groundwater". Notably, plaintiffs' expert, Martin Klein, opined that the soil and groundwater contamination could have occurred during periods of spring flooding from the Hackensack River, which had tested positive for TCE contamination. Accordingly, since defendants have not definitively shown that the pollution of plaintiffs' soil and shallow groundwater was "an outgrowth, maturation or complication" of the contamination of plaintiffs' well water (*Fusaro v Porter-Hayden Co.*, 145 Misc 2d 911, 916, *affd* 170 AD2d 239), Supreme Court correctly concluded that dismissal at this time was premature (*see, Trepuk v Frank*, 44 NY2d 723; *Scherrer v Time Equities*, 218 AD2d 116; *Cochrane v Owens-Corning Fiberglas Corp.*, 219 AD2d 557).

As to defendants' contention that plaintiffs "knew or should have known" of these additional injuries at the time of the original contamination of their wells due to the heightened publicity such contamination received in numerous local newspapers, RCDH's hand-delivered warnings and DEC's phase I and phase II reports, we agree with Supreme Court that this issue cannot be determined at this time. Our review of these documents reveal that they addressed a concern with the contamination of plaintiffs' wells rather than their soil or their shallow groundwater, and that plaintiffs relied upon DEC's phase II report which they claim led them to believe that their problem had been remediated. The issue becomes further conflicted by the differing definitions that each expert gave to the term "groundwater". Mindful that " '[i]nquiry regarding the time a plaintiff discovered or could, in the exercise of reasonable diligence, have discovered a condition presents a mixed question of law and fact and, where the plaintiff's knowledge cannot be conclusively demonstrated, a motion to dismiss the complaint must be denied and the question deferred until trial' ", we decline to disturb Supreme Court's order (*Scherrer*

*v Time Equities, supra* at 124, quoting *Cochrane v Owens-Corning Fiberglas Corp., supra*, at 559; *see, Roman v Radio Frequency Co.*, 207 AD2d 1012; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214-c:2, at 633).

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, with one bill of costs.