John **LESSORD**, et al., Plaintiffs,

v.

**GENERAL ELECTRIC CO.,**
et al., Defendants.

No. 01–CV–6103.

United States District Court,
W.D. New York.

Aug. 29, 2002.

Alan J. Knauf, Knauf & Shaw LLP, Rochester, NY, for plaintiffs.

S. Paul Battaglia, Bond, Schoeneck & King, Syracuse, NY, for General Elec. Co., Black & Decker (U.S.), Inc., defendants.

Richard E. Alexander, Harter, Secrest and Emery, LLP, Rochester, NY, Mark S. Lillie, John C. Bunge, John T. Hickey, Jr., Kirkland & Ellis, Chicago, IL, David W. Reger, Btesler, Amery & Ross, Florham Park, NJ, for 3M Co., DynaColor Corp., defendants.

Joseph Picciotti, III, Harris Beach & Wilcox, Rochester, NY, for AgriLink Foods, Inc., defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiffs, John Lessord, Mary Jane Lessord, Shawn Lessord and Jillayne Lessord, commenced this action on February 28, 2001, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Plaintiffs seek various relief in connection with the contamination of property owned by plaintiffs ("the Lessord property") on Lyman Street in the Village of Brockport, in the Town of Sweden, New York. The contaminants include polychlorinated biphenyls ("PCBs"), solvents, petroleum constituents, and other substances. The contamination was allegedly caused by releases of contaminants from certain industrial sites in Brockport. Plaintiffs have sued seven corporations, all of which allegedly have some connection with or responsibility for the contamination of the Lessord property. Plaintiffs have asserted a claim under CERCLA, as well as several claims under New York law.

Two of the defendants, General Electric Company ("GE") and Black & Decker (U.S.) Inc. ("B & D") have moved to dismiss plaintiffs' state law claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment under Rule 56, on the ground that those claims are time-barred. For the reasons that follow, defendants' motions are denied.

## FACTUAL BACKGROUND

The contamination on the Lessord property is alleged to have emanated from two sites. The first of these, the Dynacolor Site, is a 3.5–acre parcel currently owned and operated by defendant Agrilink Foods, Inc. ("Agrilink"). Defendant Dynacolor Corporation ("Dynacolor") owned the site from 1956 to 1961, when Dynacolor sold the site to defendant Minnesota Mining and Manufacturing Company ("3M"). 3M owned the site until 1985, when it donated the site to the Town of Sweden, which transferred the site to Agrilink a year later.

Plaintiffs allege that Dynacolor and 3M ("the 3M defendants") performed photo-processing operations at the Dynacolor Site until 1978, during which they discharged wastewater containing cyanide and other contaminants. The wastewater exited the site through a northward-flowing drainage ditch ("the ditch") that runs under the Erie Canal to a stream running through the Lessord property ("the stream"), polluting the stream. Although 3M has performed some remedial work at the Dynacolor Site, plaintiffs allege that the 3M defendants and Agrilink have failed to adequately remediate the contamination.

The other alleged source of the contaminants on the Lessord property is the GE

Site, which consists of about 28.6 acres in the Village of Brockport. The GE Site was owned by GE from about 1949 to 1984, when it sold the site to B & D. B & D owned and operated the site until 1988, when it sold the site to the County of Monroe Industrial Development Agency ("COMIDA"). COMIDA leased the site to defendant Kleen Brite Laboratories, Inc. ("Kleen Brite"). In 1993, COMIDA sold the site to defendant JMT Properties, Inc. ("JMT"), the current owner, which continues to lease the site to Kleen Brite to this day.

Both GE and B & D manufactured electrical appliances and other items at the site. During those operations, GE and B & D allegedly disposed of trichloroethylene ("TCE"), PCBs, and other contaminants at the site. As a result, groundwater at or near the GE Site was contaminated, and the contaminants spread northward to the Lessord property, roughly a quarter mile away. Although GE and B & D have undertaken some efforts at remediation, plaintiffs allege that defendants have not remedied contamination at the site.

Plaintiffs allege that the contamination from the two sites is continuing, and that as a result of their exposure to the contaminants, plaintiffs' health has been threatened, their property has severely declined in value, and they have incurred response costs due to the contamination.

The complaint asserts seven causes of action. The first alleges that all defendants are strictly liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), for investigation, cleanup, remediation and removal of the contamination of the Lessord property, and that defendants should be ordered to pay all plaintiffs' past and future response costs and to take any necessary steps to remediate the contamination. The second cause of action alleges strict liability for emission of hazardous substances under the New York Environmental Conservation Law ("ECL"), Article 37. The third through seventh causes of action assert claims under common law for, respectively, negligence, trespass, strict liability for abnormally hazardous activity, public nuisance, and private nuisance.[1] The eighth cause of action alleges that the 3M defendants are strictly liable to plaintiffs under New York Navigation Law § 181(5), which provides a right of action for any person who sustains damages as the result of an oil spill caused by another person.

As stated, defendants have moved in the alternative either to dismiss plaintiffs' common law claims, *i.e.*, claims three through seven, or for summary judgment on those claims on the ground that they are time-barred. Because both defendants, as well as plaintiffs, have submitted materials outside the pleadings, I will treat the motions as motions for summary judgment.[2] Because I find that genuine issues of fact exist as to when the limitations period began to run on those claims, however, defendants' motions must be denied.

## DISCUSSION

### I. Burden of Proof

Under the well-established standards governing summary judgment motions, summary judgment will be granted if the record demonstrates that "there is no gen-

---

1. The fourth and fifth causes of action are asserted only against the 3M defendants, GE, and B & D.

2. Plaintiffs oppose defendants' motions in part on the ground that they need addition-

al discovery, pursuant to Fed.R.Civ.P. 56(f). Since I conclude that defendants are not entitled to summary judgment even on the evidence that they have submitted, I find it unnecessary to rule on plaintiffs' Rule 56(f) request.

uine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994). As the parties moving for summary judgment, defendants bear the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movants establish that there is no genuine issue of material fact, then the burden shifts to the nonmovants to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993).

The Court must also, however, consider the burden of proof with respect to defendants' statute of limitations defense. That defense is asserted, at this point, only against plaintiffs' New York common law claims, which are brought pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

"New York statutes of limitations apply to plaintiffs' supplemental state law tort claims." *Wiwa v. Royal Dutch Petroleum Co.,* 2002 WL 319887, *20 (S.D.N.Y. Feb.28, 2002). *See also Overall v. Estate of Klotz,* 52 F.3d 398, 402–05 (2d Cir.1995) (applying New York statute of limitations and tolling doctrines to state law claims in diversity case); *Bouton v. BMW of North America,* 29 F.3d 103, 110 (3d Cir.1994) (recognizing that rule requiring application of state law limitations periods to state claims brought pursuant to diversity jurisdiction also applies to supplemental state law claims). This rule also requires federal courts to apply state rules that are an "integral part of the statute of limitations," including tolling rules. *Walker v. ARMCO Steel Corp.,* 446 U.S. 740, 751 & n. 12, 100

S.Ct. 1978, 64 L.Ed.2d 659 (1980) (internal quotations omitted).

Under New York law, "[b]ecause the statute of limitations is an affirmative defense, the defendant[s] bear[ ] the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff[s'] claims accrued." *Overall,* 52 F.3d at 403 (citing *Hoosac Valley Farmers Exchange, Inc. v. AG Assets, Inc.,* 168 A.D.2d 822, 563 N.Y.S.2d 954 (3d Dep't 1990)); *accord Larkins v. Glaxo Wellcome, Inc.,* 1999 WL 360204, *1 (E.D.N.Y. May 20, 1999); *Dorsey v. Apple Computers, Inc.,* 936 F.Supp. 89, 90 (E.D.N.Y.1996). Once the defendants meet that burden, the burden then shifts to the plaintiffs to establish that the limitations period should be tolled, or that some exception to the limitations rule should apply. *Id.* (citing *Waters of Saratoga Springs, Inc. v. State,* 116 A.D.2d 875, 498 N.Y.S.2d 196 (3d Dep't), *aff'd,* 68 N.Y.2d 777, 506 N.Y.S.2d 673, 498 N.E.2d 146 (1986)); *see also Pompa v. Burroughs Wellcome Co.,* 259 A.D.2d 18, 696 N.Y.S.2d 587 (3d Dep't 1999) (plaintiffs having conceded that action was not commenced within general three-year limitations period of CPLR § 214, burden was on them to aver evidentiary facts showing that exception embodied in § 214–c(4) applied); *L & L Plumbing & Heating v. DePalo,* 253 A.D.2d 517, 677 N.Y.S.2d 153 (2d Dep't 1998) (where defendant met her initial burden of establishing by prima facie proof the affirmative defense that the statute of limitations had elapsed, burden shifted to plaintiff to rebut this presumption by establishing applicability of the relation-back doctrine).

Defendants, then, have the initial burden of showing that the limitations period has expired as to plaintiffs' claims. Once they have done so, plaintiffs, in order to defeat the motions for summary judgment, must demonstrate that there are genuine issues

of material fact as to that issue, whether because the limitations period should be tolled, or for some other reason. *See Cox v. Kingsboro Med. Group,* 88 N.Y.2d 904, 906, 646 N.Y.S.2d 659, 669 N.E.2d 817 (1996) (defendants moving for summary judgment satisfied burden of making prima facie showing of entitlement to judgment as a matter of law by demonstrating that they were served with complaint after expiration of the 2 ½-year limitations period for medical malpractice claims; consequently, plaintiffs bore burden of demonstrating the existence of triable issues of fact concerning whether doctrine of continuous treatment tolled statute of limitations for those claims); *Evans v. Ginsberg,* 292 A.D.2d 566, 739 N.Y.S.2d 429 (2d Dep't 2002) (once defendant satisfied his burden as proponent of motion for summary judgment by demonstrating that action was commenced more than 2 ½ years after the occurrence of the alleged malpractice upon which the plaintiff's complaint was based, burden shifted to the plaintiff to demonstrate a triable issue of fact with respect to tolling of statute of limitations based upon continuous-treatment doctrine).

## II. Which Statute Governs in this Case

Defendants contend that the statute of limitations that applies to plaintiffs' common law claims is that set forth in N.Y. CPLR § 214–c(2). That section provides for tolling of the three-year period generally applicable to actions to recover damages for personal injury or injury to property under § 214. Specifically, § 214–c(2) states:

Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

Plaintiffs do not take a clear position on which statute of limitations applies. Rather, they contend that any one of three statutes applies, but that their action is timely under each.

First, plaintiffs contend that if the Court applies § 214–c(2), the action is timely because the evidence shows that, regardless of when plaintiffs' property first became contaminated, they did not have knowledge of such contamination until late 1999, less than two years before they filed the complaint in this action in February 2001. Plaintiffs assert that prior to 1999, although they were aware generally that there was contamination in the area, they reasonably believed, based on the facts then available to them, that there was no significant contamination of their own property.

Plaintiffs next argue that their claims are timely under CPLR § 214–c(4), which provides for an extension of the limitations period where the plaintiff was aware of his injury, but unaware of its cause due to a lack of sufficient technical, scientific or medical knowledge and information. Specifically, that section provides that

[n]otwithstanding the provisions of subdivisions two and three of this section, where the discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury or when with reasonable diligence such injury should have been discovered, whichever is earlier, an action may be commenced or a claim filed within one year of such discovery of the cause of the injury; provided, however, if any such action is commenced or claim filed after the period in which it would otherwise have been authorized pursuant to

subdivision two or three of this section the plaintiff or claimant shall be required to allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized and that he has otherwise satisfied the requirements of subdivisions two and three of this section.

This section, then, extends the limitations period for one year following discovery of the *cause* of an injury, provided that such discovery is made within five years after the injury itself is discovered, upon a showing by the plaintiffs that there was insufficient scientific, technical or medical knowledge to allow the cause of their injury to have been discovered within the otherwise applicable limitations period.

Plaintiffs contend that their action is timely under this section because they did not know that the cause of the contamination of the stream on their property by PCBs (which were first discovered in the stream in 1999) was stormwater runoff from the GE Site until investigations were conducted by the New York State Department of Environmental Conservation ("DEC") and a private engineering firm in 2000. Plaintiffs also argue that the one-year period under § 214–c(4) did not begin to run until they identified the correct defendants, *i.e.* the defendants who caused

the contamination, which also did not occur until late 2000.

In addition, plaintiffs contend that their action is timely under CERCA § 309, 42 U.S.C. 9658[3], which provides that if a claim is brought under state law for property damages caused by hazardous chemicals, the state statute of limitations cannot begin to run until the "federally required commencement date" ("FRCD"), which is the date on which the plaintiff first knew or reasonably should have known that the damages were caused by hazardous chemicals. This statute "neither creates a separate federal cause of action based on toxic torts within its terms nor a uniform statute of limitations for such torts; rather, it provides a uniform accrual date from which the applicable state period of limitation governing the relevant claim is measured." *In re Pfohl Bros. Landfill Litigation,* 68 F.Supp.2d 236, 248 (W.D.N.Y. 1999), *vacated and remanded on other grounds sub nom. Freier v. Westinghouse Elec. Corp.,* 303 F.3d 176 (2d Cir.2002).

Plaintiffs assert that the effect of § 9658 is to delay the commencement of the limitations period beyond either § 214–c(2) or § 214–c(4), since the former tolls the statute until the discovery of the injury, but not its cause, and the latter applies only where "technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined"

---

**3. § 9658. Actions under state law for damages from exposure to hazardous substances (a) State statutes of limitations for hazardous substance cases**
(1) Exception to State statutes. In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides

a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

The term "federally required commencement date" is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658(b)(4)(A).

previously. According to plaintiffs, under § 9658, the limitations period did not begin to run until the Fall of 2000, when they first discovered that PCBs were entering the stream from the GE Site.

The Second Circuit has very recently examined the interplay between CPLR § 214–c and CERCA § 309. In *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176 (2d Cir.2002), the court said that it is "indisputably clear that Congress intended, in the cases to which § 9658 applies, that the FRCD preempt state law accrual rules if, under those rules, accrual would occur earlier than the date on which the cause of the personal injury was, or reasonably should have been, known to be the hazardous substance." 303 F.3d 176, 196–97. Noting that "[t]he FRCD preempts a more restrictive state law only with respect to the date on which a claim accrues, not with respect to the length of the limitations period," the court added that "New York law still controls with respect to the length of the limitations period." *Id.* at 209–10. The court concluded that "[s]ection 214–c, as modified by the FRCD, gives the plaintiff one year from the date

of discovery of the cause of the injury to commence a lawsuit (or three years from the date of discovery of the injury, if longer) and that provision satisfies the requirements of the FRCD." *Id.*[4]

In the case at bar, then, plaintiffs had either three years from the date of discovery of their injury, or one year from the date on which they discovered or reasonably should have discovered the cause of their injury, whichever period ended later. Plaintiffs allege that they became aware of the contamination of their property at issue in late 1999, and that they first learned that the GE Site was the source of that contamination in late 2000. If those allegations are true, then under *Freier*, plaintiffs would have had until some time in 2002 to bring an action.[5]

In addition, if the facts show that plaintiffs discovered or should have discovered the cause of their injury more than two years after they discovered the injury itself, then under § 214–c(4), as modified by § 9658, they would have had one year from the date of discovery of the cause of the injury to file suit.[6]

---

**4.** The court in *Freier* also held that the FRCD does not violate the Commerce Clause or the Tenth Amendment to the United States Constitution, thus erasing whatever doubt about § 9658's constitutionality that the court had earlier raised in *ABB Indus. Systems, Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 n. 5 (2d Cir.1997) (stating that § 9658 "appears to purport to change state law, and is therefore of questionable constitutionality," but finding it unnecessary to decide the issue).

**5.** As pointed out by Judge Leval in his concurring opinion in *Freier*, § 214–c(2)'s accrual date, the date on which the plaintiff discovers the injury, "is illegal under the FRCD because it commences at a date earlier than the 'the date the plaintiff knew (or reasonably should have known)' the cause of injury." 303 F.3d at 210–11 (quoting 42 U.S.C. § 9658(b)(4)(A)). Under *Freier,* however, § 214–c(2)'s accrual date would nonetheless apply if the three-year period running from that date ended later

than the one-year period commencing on the date of actual or imputed discovery of the cause of the injury under § 214–c(4), as modified by § 9658.

**6.** As explained in *Freier,* pursuant to § 9658, § 214–c(4)'s requirement that the discovery of the cause occur within five years after the discovery of the injury is preempted by the FRCD. 303 F.3d at 210–11. In addition, "[t]o the extent ... that the scientific-knowledge provision of CPLR § 214–c(4) imposes an accrual date earlier than the date on which the plaintiff knew or reasonably should have known the cause of the injury, it is ... preempted by the FRCD" as well. 303 F.3d at 206–07. *See also id.* at 212 ("The scientific knowledge proviso, like the condition requiring the discovery of cause to be within five years of the discovery of injury, cannot function lawfully; it is therefore preempted by the FRCD and must be disregarded") (Leval, J., concurring).

### III. Application of §§ 214–c and 9658 to this case

■ After reviewing the record, I conclude that issues of fact exist concerning when plaintiffs discovered, or reasonably should have discovered, both the injury at issue in their claims against the· moving defendants, and the cause of that injury. Accordingly, defendants' motions for summary judgment must be denied.

The evidence indicates that the DEC became aware that the GE Site contained hazardous wastes during the 1980s. *See, e.g.,* DEC 1995 "Fact Sheet" (B & D's Ex. A–4) at 2 (noting that test results in 1983 "showed possible groundwater contamination" at the GE Site). There is also evidence that at various times in the 1990s, the DEC issued notices (generally in the form of "Fact Sheets") to the public concerning the contamination on and around the GE Site. There is also evidence that there were reports in the local news media about the DEC investigation.

Plaintiffs do not contest these general allegations that information about chemical contamination in the area was disseminated to the public during the mid 1990s. They deny, however, that they were aware of any significant contamination of the stream emanating from the GE Site until 2000, and I see no evidence in the record that demonstrates conclusively that plaintiffs were aware of the contamination before then.[7] While the evidence may persuade a jury that plaintiffs knew or should have known of the contamination at some earlier date, the Court cannot make such a determination on a motion for summary judgment.

In addition, there is evidence that some of the information available to plaintiffs prior to 1999 indicated that there was no contamination of the stream, or at least none that plaintiffs needed to be concerned about. Some of that information also indicated that whatever contaminants were present in the stream had probably originated at the Dynacolor Site, not the GE Site.

For example, in a letter dated February 21, 1996, Steven J. Shost, an Environmental Health Specialist with the New York State Department of Health ("DOH"), informed plaintiff John Lessord of the results of a test of water and sediment samples taken from the stream on January 25, 1996, as part of an ongoing investigation of the GE Site. He stated, "Although some chemicals were found in the water sample that I collected from the stream on your property, the levels are too low to cause illness in individuals playing or wading in the stream. In fact, the observed levels of these contaminants are all below the State's drinking water standards." Lessord Aff. Ex. B.

Similarly, in a letter to John Lessord dated August 26, 1997, Shost related additional results of tests for metals and cyanide in the stream, since those substances were among the contaminants that had been identified in soil and groundwater at the GE and Dynacolor Sites. Shost stated that cyanide was detected at concentrations "too low to pose a health concern ...." Affidavit of S. Paul Battaglia, Esq. (Docket # 13), Ex. L. He added, however, that "the presence of cyanide in these samples may indicate that the creek receives contaminated water from the *3M/Dynacolor* site, where cyanide is a contaminant of concern." *Id.* (emphasis added). He reported similar results for metals, and said, "Again, I have requested that *3M* perform

---

7. As explained below, plaintiffs concede that they were aware at some point prior to 1999 of the presence of some minimal levels of contaminants in the stream, but I do not believe that this supports a finding that, as a matter of law, the limitations period began to run when plaintiffs first became aware of such low levels of contaminants.

the necessary work." *Id.* (emphasis added).

It was not until September 1999 that Shost reported to John Lessord that a sediment sample taken from the stream on July 19, 1999 contained "[concentrations of PCBs and total polycyclic aromatic hydrocarbons" that were "above levels at which [the DOH] typically requires clean up for residential use." Lessord Aff. Ex. C. Shost stated that further testing was needed to determine the extent of the contamination, and in the meantime he advised plaintiff to "avoid direct contact with black-stained sediment in the stream." *Id.*

That September 1999 letter, however, did not identify any suspected source of the contamination. In a letter to the DEC dated October 20, 2000, Ray Wuolo, an engineer with Barr Engineering Company, which had performed chemical analyses of sediment samples from the vicinity of the Dynacolor Site, concluded that "PCBs are entering the storm sewer system from at least two different branches upstream .…." Lessord Aff. Ex. E. His report also stated that the catch basins from which the PCBs were entering the sewer system "receive[d] flow from the former Black & Decker property," *i.e.,* the GE Site. *Id.*

A March 1, 2001 DEC Fact Sheet also states that "DEC *initially* sampled the tributary [*i.e.,* the stream] in July of 1999." Even at that date, the DEC stated that based on "*preliminary* on-site sampling data, DEC required additional sampling to evaluate the former GE/Black & Decker site as a *potential* source of PCBs." Lessord Aff. Ex. F. The Fact Sheet stated that additional on-site sampling had been performed on February 26, 2001, and that the results were expected within the next four weeks.

Thus, there is some evidentiary support for plaintiffs' allegations that they were unaware of the PCB contamination in the stream until 1999, and that it was not until 2000 at the earliest that there was solid evidence that the GE Site was a possible source of that contamination. When all the evidence is presented at trial, a jury may conclude that plaintiffs knew or should have known about the contamination at some earlier date, but given the conflicting evidence on that point, it is not for the Court to decide that issue as a matter of law.

Likewise, there is some evidence that plaintiffs knew about widespread chemical contamination in the vicinity of their property; as stated, they themselves admit as much. For instance, defendants point to a map that was distributed at a June 6, 1996 public meeting at which members of the DOH, DEC, and Monroe County Department of Health were present.[8] Allegedly the map shows the presence of TCE in ground water in plaintiffs' neighborhood, including the Lessord property. Affidavit of Paul Wm. Hare (Docket # 14), Ex. 19.

Plaintiff John Lessord states in his affidavit that he does not recall receiving a copy of this map. Lessord Aff. ¶ 32. Even assuming that plaintiff did receive a copy, however, I am not prepared to rule as a matter of law that this constituted notice sufficient to commence the running of the limitations period. The map (which is marked "DRAFT") shows roughly concentric curved lines (similar to those found on a topographic map to show elevation), indicating the level of TCEs along those lines, with the highest concentrations in the center. The outermost line, showing a level of five parts per billion (the lowest concentration shown on the map), runs through a part of plaintiffs' property.

---

**8.** A sign-in sheet from the meeting bears what appears to be John Lessord's signature. Affidavit of Paul Wm. Hare (Docket # 14), Ex. 22.

That portion of the line running through plaintiffs' property is dashed, which indicates that the level of TCEs along that line is "inferred." *Id.*

Again, this may prove to be highly persuasive evidence to a factfinder. The court's "task at the summary judgment motion stage of the litigation," however, "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding[ them]." *Gallo v. Prudential Residential Services, Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994). I am not prepared to rule as a matter of law that this map, which indicates that it was a "draft," showing an "inferred" level of TCEs of five parts per billion (the lowest level indicated on the map) through a portion of plaintiffs' property, was enough to trigger the running of the statute of limitations on plaintiffs' claims against GE and B & D.

In addition, that map appears to have been based on testing that was done in early 1996. In a letter dated March 18, 1996, however, Paul Hare, a Remedial Project Manager for GE, told John and Mary Jane Lessord that the preliminary analytical results of a water sample collected from their basement showed that "[n]o site-related compounds were detected," and that there was therefore "no need . . . to conduct indoor air sampling in your home." Hare Aff. Ex. 8. Thus, the map's indication that there may have been some contamination on the Lessord property was to some extent undercut by contemporaneous test results taken from plaintiffs' home.

It must also be remembered that the GE Site is not the only source of chemical contamination in the area, and that there are various contaminants at issue here. As stated, the mere fact that plaintiffs might have known that there was some contamination of their property does not mean that they could or should have sued everyone who *might* be liable. At this point, it is not even clear that the TCEs indicated on the map originated at the GE Site, so it cannot be said as a matter of law that plaintiffs' alleged receipt of this map triggered the limitations period for their claims against GE and B & D.

While I recognize that "[i]t is not necessary . . . for a plaintiff to know the identity of each defendant's specific contaminants that damaged the property before the statute of limitations begins to run," *Seneca Meadows, Inc. v. ECI Liquidating, Inc.,* 983 F.Supp. 360, 364 (W.D.N.Y.1997), at the same time, Rule 11 of the Federal Rules of Civil Procedure mandates that an attorney is not to present a pleading or other paper to the court unless he reasonably believes that the factual allegations contained in the pleading or paper have evidentiary support, or at least that they are likely to have evidentiary support after further investigation or discovery.[9]

---

9. In *Seneca Meadows,* the plaintiff, which owned and operated a landfill ("the Tantalo Site"), sued a number of entities that had generated hazardous wastes that they had disposed of at the landfill. This Court, in holding that the plaintiff's state law claims were untimely, rejected the plaintiff's argument that the statute of limitations did not begin to run until the plaintiff knew exactly which contaminants had been discharged by which defendants. In *Seneca Meadows,* though, the plaintiff had "essentially concede[d] that in 1985–a decade before the . . . action was commenced-it knew of both the injury (the pres-

ence of hazardous substances in the groundwater at the Tantalo Site) and its cause (the wastes at the Tantalo Site)." 983 F.Supp. at 363. *Seneca Meadows,* then, involved a single site that had been contaminated by wastes dumped *directly at the site* by known parties, all of which plaintiff had been aware of for ten years. In the instant case, however, there is evidence that there was an investigative process that took place over a number of years, and that over the course of that process, plaintiffs learned both that their property was contaminated, and the source of that contamination. At what point during that

Plaintiffs in toxic tort cases, then, should not be encouraged to take a shotgun approach and sue everyone who *might* be liable, before they have an evidentiary basis for asserting a claim. GE argues that the discovery of PCBs in the stream in 1999 does not provide a basis for a recent accrual date because PCBs are just one constituent of a combination of contaminants on the Lessord property, and plaintiffs have allegedly been aware of that general contamination for many years. Were the Court to accept that argument, however, it would implicitly encourage just such a shotgun approach. Assuming *arguendo* that plaintiffs were long aware that there was some sort of contamination on their property, they still needed some evidentiary basis for asserting liability before they sued GE and B & D. In fact, had plaintiffs commenced this action in 1996, as defendants now argue they should have, defendants very likely would have moved to dismiss for failure to state a claim.

As stated, these issues will ultimately be for a jury to decide. At this point, though, I cannot rule as a matter of law that plaintiffs sat on their rights while the limitations period was running. *See Glod v. Morrill Press Div. of Engraph,* 168 A.D.2d 954, 956, 564 N.Y.S.2d 905 (4th Dep't 1990) ("Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could reasonably be inferred, . . . the question should be left to the trier of fact"); *see also Pompa v. Burroughs Wellcome Co.,* 259 A.D.2d 18, 25, 696 N.Y.S.2d 587 (3d Dep't 1999) ("While the burden remains upon plaintiffs at trial to make the showing required by

CPLR 214–c (4), material questions of fact were raised pertaining to the applicability of this extension"); *Grossjahann v. Geo. B. Wilkins & Sons, Inc.,* 244 A.D.2d 808, 809–10, 666 N.Y.S.2d 271 (3d Dep't 1997) (plaintiff's averments that defendant had assured him that underground storage tanks were empty, and that plaintiff never detected any oil or gasoline on his property, though "self-serving," were nonetheless probative, and raised a legitimate question of fact concerning whether plaintiff commenced action within three years from the date when plaintiff discovered or reasonably should have discovered his injury).

I also believe that it is for a jury, not the Court on a motion for summary judgment, to weigh the strength of defendants' contention that plaintiffs were on notice of contamination of the stream as far back as the 1970s. In support of this assertion, defendants point to evidence that John Lessord has stated that he saw various, unnatural colors running in the stream at that time.[10] Defendants have not even shown that those colors were caused by chemicals emanating from the GE Site, much less that these incidents should have put plaintiffs on notice of such contamination and its source.[11] In short, defendants' evidence, viewed as a whole, does lend some weight to their arguments that plaintiffs knew or should have known of their injury and its cause more than three years before they commenced this action, but the weight of that evidence, and whether it is enough to find plaintiffs' claims time-barred, are for a properly-instructed jury to determine.

---

process they first knew, or should have known, enough to commence the limitations period with respect to their claims against GE and B & D, will be for a jury to determine.

10. Although this evidence comes from a newspaper article, and is therefore of questionable admissibility, John Lessord has stat-

ed in his affidavit that he did see such colors running in the stream. Lessord Aff. ¶ 43.

11. Furthermore, B & D had not even begun its operations at the GE Site at the time that John Lessord saw those colors, so the colors could not have put plaintiffs on notice of any contamination caused by B & D.

With respect to the question of whether plaintiffs should have done more, sooner, to ascertain the cause of their injury, I also note that in *Freier*, the Second Circuit stated that it did not believe that either Congress or the New York Legislature, in making the triggering of the limitations period dependent on when a plaintiff "reasonably should have known" of the cause of his injury, or on whether scientific or medical knowledge existed that was sufficient to permit that cause to be ascertained, "meant to refer to scientific knowledge that would not have been available to a plaintiff without the expenditure of huge sums of money to commission independent studies," or "to information that was obtainable only through the private commissioning of expensive studies." 303 F.3d at 206–07. Certainly, then, it would be inappropriate as a matter of law to find plaintiffs' claims time-barred merely because they did not undertake to go beyond what the DEC had done and have their own tests performed to try to ascertain sooner the nature, extent and source of the suspected contamination.

In addition, I note plaintiffs' contention that there is no evidence that they even *had* a cause of action until 1999 at the earliest, because there is no evidence of any contamination of their property emanating from the GE site prior to that time. All prior contamination, plaintiffs assert, was of neighboring property, except for some "*de minimis*" contamination of the stream by volatile organic compounds ("VOCs") in 1999. Plaintiffs, however, argue that such minimal levels of contaminants will not give rise to a tort cause of action.

■ In response, defendants argue that any invasion of one's land can support a trespass or nuisance claim, and that occurrence triggers the running of the limitations period. To support a nuisance claim, however, there must be a "substantial" interference with one's use and enjoyment of property. *Scribner v. Summers,* 84 F.3d 554, 559 (2d Cir.1996). And even assuming that a minimal invasion can support a trespass claim, *see Kronos v. AVX Corp.,* 81 N.Y.2d 90, 95, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993) (nominal damages are available to protect a landowner's right to be free of trespass, "because a continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land"), I believe that a jury should decide at what point plaintiffs became aware of levels of contamination sufficient to put them on notice that a trespass to their property had occurred. Moreover, given the uncertainty that appears to have existed concerning the source of contamination in the stream, fact issues remain with respect to when plaintiffs reasonably should have discovered the entity that caused their injury.

■ Finally, the Court must address plaintiffs' contention that there are issues of fact relating to the application of New York's "two-injury rule." Under this rule, which evolved in the context of exposure-related medical problems but which has since been applied to toxic torts generally, where the statute of limitations has run on one injury, a later injury that is "separate and distinct" from the first is still actionable under New York law. *Braune v. Abbott Labs.,* 895 F.Supp. 530, 555–56 (E.D.N.Y.1995) (citing *Fusaro v. Porter–Hayden Co.,* 145 Misc.2d 911, 915, 548 N.Y.S.2d 856 (N.Y.Sup.1989), *aff'd,* 170 A.D.2d 239, 565 N.Y.S.2d 357 (1st Dep't 1991)); *see also Griffin v. Garratt–Callahan Co.,* 74 F.3d 36, 40 (2d Cir.1996) (applying two-injury rule but finding that the plaintiff's two injuries were related and therefore time-barred); *Sweeney v. General Printing Inc.,* 210 A.D.2d 865, 865–66, 621 N.Y.S.2d 132 (3d Dep't 1994) (same), *leave to appeal denied,* 85 N.Y.2d 808, 628

N.Y.S.2d 50, 651 N.E.2d 918 (1995); *Bimbo v. Chromalloy American Corp.*, 226 A.D.2d 812, 640 N.Y.S.2d 623 (3d Dep't 1996) (since defendants had not shown that pollution of plaintiffs' soil and shallow groundwater was an "outgrowth, maturation or complication" of contamination of plaintiffs' well water, lower court correctly decided that dismissal was premature). Plaintiffs assert that a jury should decide whether the pre–1999 incidents and manifestations of contamination were separate and distinct from the contamination giving rise to this lawsuit, so as to warrant application of this rule.

Defendants argue that this rule is inapplicable to this case, since GE ceased operations at the GE Site in 1984, and B & D ceased operations there in 1988. Thus, defendants argue, any contamination found in 1999 or later was either not caused by them, or was an "outgrowth, maturation or complication" of their pre–1988 contamination.

This argument is not without some persuasive force. However, since defendants have argued that plaintiffs were aware of some contamination as far back as the 1970s, I am not prepared to decide at this point whether plaintiffs may avail themselves of the two-injury rule. Given the other issues of fact surrounding the commencement of the statute of limitations in this case, I believe that it would be wiser to await trial to determine whether the evidence warrants submission of this issue to a jury. *See Golod v. La Roche*, 964 F.Supp. 841, 852 (S.D.N.Y.1997) (factual issue concerning whether plaintiff's injuries were simply complications of ongoing ocular problems which had begun years earlier presented factual issue barring summary judgment in defendant's favor).

## CONCLUSION

The motions for summary judgment filed by defendants General Electric Company (Docket # 10) and Black & Decker (U.S.) Inc. (Docket # 18) are denied.

IT IS SO ORDERED.