OPINION OF THE COURT
Emily Pines, J.
Introduction
Plaintiff Suffolk County Water Authority (SCWA) owns and/or operates public drinking water systems and supplies drinking water to thousands of residents and businesses in Suffolk County, New York. It is the largest groundwater supplier in the nation and serves more than one million Suffolk County residents.
In this action, SCWA claims that the toxic chemical perchloroethylene (PCE), and its degradation products trichloroethylene (TCE) and dichloroethylene (DCE), contaminate many of its drinking water supply wells. As a result of this contamination, SCWA claims that it has incurred and continues to incur costs and expenses for its investigation, treatment, remediation and *261 monitoring of its wells. It asserts seven causes of action sounding in strict products liability based on defective design, strict products liability based on failure to warn, nuisance, trespass, and negligence against more than two dozen defendants including (1) numerous manufacturers, distributers and retailers of PCE and (2) numerous manufacturers, distributers and retailers of dry cleaning equipment intended for use with PCE. Currently before the court is the joint motion by all defendants pursuant to CPLR 3212 for summary judgment dismissing the complaint as to the majority of wells that SCWA asserts are contaminated, on statute of limitations grounds and/or lack of standing.
The parties do not dispute the following. In 1980, the United States Environmental Protection Agency (EPA) issued a public notice of its intent to set a mandatory Maximum Contaminant Level (MCL) for PCE and its degradation products (45 Fed Reg 77870 [Nov. 24, 1980]). The EPA noted a “possible health risk to the public” from the presence of such chemicals in public water systems (id.). In 1985, the EPA issued a public notice of proposed rulemaking proposing MCLs for eight volatile organic chemicals including TCE and DCE, and setting Recommended Maximum Contaminant Levels (RMCLs) for each at zero (50 Fed Reg 46902, Tables 1, 2 [Nov. 13, 1985]). In 1987, RMCLs were renamed Maximum Contaminant Level Goals (MCLGs) (52 Fed Reg 12876 [Apr. 17, 1987]). In 1989, the EPA issued a public notice of a proposed rulemaking proposing an MCL for PCE of 5.0 parts per billion (ppb) and an MCLG for PCE of zero (54 Fed Reg 22062, 22064 [May 22, 1989]). In 1991, the EPA issued a notice of final rulemaking setting an MCL for PCE of 5.0 ppb and an MCLG for PCE of zero (56 Fed Reg 3526, 3528, Table 2 [Jan. 30, 1991]). The New York State Department of Health imposes an MCL for PCE of 5.0 ppb.
SCWA relies on the sole source aquifer below the ground in Suffolk County and it conducts tests on a regular basis to discover and treat contaminants, such as PCE and TCE, in the drinking water. In accordance with its duty to provide safe drinking water to the public, SCWA has determined, based upon the MCLG of zero set by the EPA and its own studies, that the presence of any PCE or TCE in the public drinking water wells presents the possibility of adverse health effects.
In its complaint, SCWA alleges, among other things, that PCE was “routinely leaked or otherwise released into the environment,” that there were “discharges, releases, leaks or *262 disposals” of PCE “on lands in the vicinity of Plaintiffs Wells,” “that the use, or mishandling, of PCE frequently resulted in the release, discharge or disposal of the chemical into sewer systems, dry wells or on property,” “that each release or discharge would or could migrate through the environment, including ground water,” and “that PCE and PCE products were routinely disposed of into the ground on an ordinary basis.”
Based upon the statements of material facts submitted by the parties in accordance with rule 19-a of the Rules of the Commercial Division of the Supreme Court (22 NYCRR 202.70 [g]), the court understands that after some initial discovery, SCWA originally identified 187 wells as contaminated and the subject of its damage claims. Of these 187 wells, SCWA has voluntarily abandoned its claims with respect to 28 wells, leaving 159 wells at issue. Of the remaining 159 wells, only two wells were discovered to have contamination at or above the MCL within the three-year period prior to the commencement of this lawsuit; six wells were discovered to have some level of contamination within the same three-year period; and SCWA initially discovered some level of contamination in 151 wells more than three years before this action was commenced in 2010.
Essentially, defendants assert that SCWA’s contamination claims with regard to all but a handful of wells are time-barred, pursuant to the applicable statute of limitations contained in CPLR 214-c, because SCWA discovered injurious levels of contamination more than three years before it commenced this action. In addition, defendants argue that SCWA lacks standing to assert any claims with regard to any of the wells in which contamination has not been detected above the MCL because, it contends, no cognizable injury has, as yet, occurred.
SCWA opposes the motion contending, among other things, that it suffered injury to its wells when it detected PCE and/or TCE at any level, not just at levels above the MCL. SCWA claims that it took corrective action on wells prior to detecting contamination at levels in excess of the MCL, including increased monitoring, remediation measures and taking certain wells out of service, which placed increased burdens on the remaining wells. SCWA also argues that CPLR 214 (4) is the applicable statute of limitations, as opposed to CPLR 214-c, and that the continuing tort doctrine keeps its claims with regard to 159 of the wells at issue alive. SCWA alternatively contends that even if CPLR 214-c is applicable, the “two injury” rule, which permits different accrual dates for separate tortious acts *263 causing separate contamination of the wells, saves its claims with regard to the remaining 159 wells.
SCWA relies on a recent decision in a case in the United States District Court for the Southern District of New York, a multidistrict litigation involving the presence of methyl tertiary butyl ether (MTBE) in the water provider’s wells, which held that the issue of when injury occurs when dealing with contamination of groundwater is not to be determined by a bright-line standard based on an MCL; but, rather, on the actual injuries that the water providers have suffered. (In re Methyl Tertiary Butyl Ether [MTBE] Prods., 458 F Supp 2d 149 [SD NY 2006].) According to SCWA, as set forth in that case, to hold otherwise would mean that the MCL would preempt common-law tort liability and the court’s role is to determine whether a concentration of a pollutant below the MCL has injured the water provider as a matter of fact. (Id. at 157-158.)
With regard to the statute of limitations issue, SCWA argues that CPLR 214-c is not applicable because its injuries were not caused by the latent effects of exposure to PCE; but, rather it is injured on the date that the chemicals at issue actually appear in the subject wells. Thus, according to SCWA, CPLR 214-c, which is limited in applicability to injury caused by the latent effects of exposure, does not apply and CPLR 214 (4), which governs an action to recover damages for an injury to property except as provided in CPLR 214-c, applies and such a claim accrues on the date the harm occurs. In that case, SCWA argues, the continuing tort doctrine, which has been held inapplicable to cases falling under CPLR 214-c, would apply, and the continuous injury arising from the continuous presence of the harmful chemicals in the 159 wells involved would preclude summary judgment on statute of limitations grounds.
Alternatively, SCWA argues that even if CPLR 214-c applies, the chemicals migrated from multiple release points. SCWA asserts it must be given the opportunity to demonstrate that where the contaminant was detected both before and after the appropriate statute of limitations date, the injuries to its wells occurred from separate and distinct releases of the chemicals into the SCWA system. In response to limited discovery obtained by the defendants in preparation for these motions, SCWA contends that an issue of fact exists concerning whether the presence of these harmful chemicals in its wells arises from the exacerbation of one contaminant release or from multiple releases migrating into multiple wells. In addition, the parties *264 have agreed that the inquiry of whether the SCWA’s claims are barred, in whole or in part, by the statute of limitations, is appropriately conducted on a well by well basis.
The defendants argue that the lack of standing with regard to those wells that have not yet met the contamination levels specifically prohibited by federal and state authorities derives from the necessity to require SCWA to prove its actual harm, citing Society of Plastics Indus. v County of Suffolk (77 NY2d 761 [1991]) and Matter of Riverhead PGC, LLC v Town of Riverhead (73 AD3d 931, 933-934 [2d Dept 2010]). Even if such is not adopted by the court, defendants assert that the concomitant balance granted defendants for the enactment of CPLR 214-c was the inapplicability of the continuing tort doctrine, which should not apply in this case. With regard to the alleged two injury rule, defendants state such will not lie where, as here, the alleged harm constituted, at most, injury arising from the same “offending product.” (FCA Assoc, v Texaco Inc., 2005 WL 3560681, 2005 US Dist LEXIS 38390 [SD NY 2005].) Defendants assert that there is nothing either in SCWA’s complaint nor in the discovery taken or in the affidavits in opposition to its motion for summary judgment, other than pure conjecture, that raises an issue of fact concerning whether multiple releases occurred at different periods causing multiple separate injuries to SCWA’s wells. In this vein, defendants assert, citing Jensen v General Elec. Co. (82 NY2d 77 [1993]), that the mere presence of previously discovered contamination in a subject well is insufficient when that alone is alleged to preclude summary judgment because such is simply an outgrowth of the initial injury and in the nature of a continuing tort as opposed to a separate one. In addition, defendants argue, citing the MTBE case referred to by SCWA, that in those wells where PCE in a particular well was detected at similar levels both before and after the statute of limitations bar date, the claims would be dismissed as SCWA would be unable to demonstrate separate and distinct injuries. (In re Methyl Tertiary Butyl Ether [MTBE] Prods. Liab. Litig., 2007 WL 1601491, 2007 US Dist LEXIS 40484 [SD NY 2007].)
In response to defendants’ motion, SCWA submitted an affidavit from Charles B. Sosik, a professional hydrologist. Based on his previous experience in the MTBE litigation, he professed some familiarity with SCWA’s drinking water well system and the nature of contaminant impacts to well fields operated by SCWA. He states that to determine whether concentrations of *265 the contaminants in this case detected at a supply well are related to a preexisting release or the result of subsequent releases at the same or a different source requires significant study of many factors. These include: the form of the contaminant released; the volume; the concentration; the concentration history at such receptor; the depth of the well; the orientation of the source and receptor with respect to groundwater flow; the distance from the source to the receptor; the contaminant velocity and direction of groundwater flow; the operational history of the supply well and well field; the presence, concentration and ratio of degradants reported at the receptor; and the position and manner in which the discharge occurred (land surface lagoon, septic tank, dry well, etc.).
Summary Judgment
In order to obtain summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, offering evidence to demonstrate the absence of any material issues of fact. (Goldberger v Brick & Ballerstein, 217 AD2d 682 [2d Dept 1995].) The burden then shifts to the party opposing the motion to come forward with proof in admissible form demonstrating that there exist material issues of fact which need to be determined and therefore preclude the granting of summary judgment. (Zayas v Half Hollow Hills Cent. School Dist., 226 AD2d 713 [2d Dept 1996].)
Standing
In order to prove that a party has standing to sue it must demonstrate both (1) injury that constitutes more than mere guesswork; and (2) harm that falls within the zone of interests sought to be protected by statutory and regulatory provisions or those interests recognized by common law to prevent the actions of defendant. (Caprer v Nussbaum, 36 AD3d 176 [2d Dept 2006].) The EPA has established both MCLs and MCLGs for PCE and TCE under 41 USC § 300g-l (b) (4). The federal statute setting forth the MCLGs, although not mandatory, does specifically require that the MCL be set as close to the MCLG as feasible (42 USC §§ 300f, 300g-l, such constituting an economic consideration). New York State has promulgated similar guidelines. (10 NYCRR 5-1.2, 5-1.51.)
In declining to apply a test of injury based upon the applicable MCL in the MTBE case, Judge Scheindlin rejected the bright-line MCL standard as constituting the minimum level at *266 which injury could be asserted to have occurred, setting forth that to do so would allow such statutes to preempt common-law tort liability. Thus, she posited that whether the concentration of a pollutant below such level injures a water purveyor, such as SCWA, presents an issue of fact. (In re Methyl Tertiary Butyl Ether [MTBE] Prods., 458 F Supp 2d 149, 157-159 [2006].) As set forth in that determination, courts throughout the country have specifically rejected the use of the bright-line MCL test as a measure of when injury occurs. (See City of Greenville, Ill. v Syngenta Crop Protection, Inc., 756 F Supp 2d 1001 [SD 111 2010]; Bentley v Honeywell Intl., Inc., 223 FED 471, 478 [SD Ohio]; New Mexico v General Elec. Co., 335 F Supp 2d 1185 [D NM 2004]; City of Tulsa v Tyson Foods, Inc., 258 F Supp 2d 1263 [ND Okla 2003].)
Statute of Limitations
CPLR 214-c (2), enacted in 1986, provides as follows: “Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.”
CPLR 214 provides, in relevant part, as follows:
“The following actions must be commenced within three years: . . .
“4. an action to recover damages for an injury to property except as provided in section 214-c.”
As set forth by Judge Bellacosa in Jensen v General Elec. Co. (82 NY2d 77 [1993]), CPLR 214-c, an intensely negotiated statute, was enacted to provide relief to those injured parties whose claims would be dismissed simply because they remained unaware of latent injuries until the limitations period had expired. (Id. at 84.) Indeed, the case cites to the Bill Jacket which states that it has made significant alterations with regard to property damages claims where injury is caused by the latent effects of exposure to substances. (Id. at 84; Mem to Governor, Bill Jacket, L 1986, ch 682.)
*267 In Jensen, the Court of Appeals held that an action for damages based on a continuing trespass and nuisance from exposure of property to hazardous wastes was time-barred, where the action was brought more than three years after the owners learned that their property had been contaminated, citing the same provision (CPLR 214-c). In describing the reason for rejection of the continuing tort doctrine in the context of a latent effect of exposure to a contaminating substance case, the Court of Appeals found that the enactment of CPLR 214-c removed the specter of limiting plaintiffs to damages actually incurred within three years of the defendants’ actions. In balancing the rights of both parties to such a litigation, the statute protected the defendants’ interests by not leaving them potentially liable in perpetuity. (Id. at 87.)
On the other hand, CPLR 214-c does not prevent application of the “two injury” rule in cases where a plaintiff alleges distinct acts of tortious conduct that are not merely “an outgrowth, maturation or complication” of a prior contamination. (Bimbo v Chromalloy Am. Corp., 226 AD2d 812, 815 [1996].) In Bimbo (supra), the Appellate Division, Third Department denied a motion to dismiss plaintiffs’ action alleging contamination to their groundwater and soil. While the defendants’ expert stated that all contamination was an outgrowth of a single injury to the plaintiffs’ wells, plaintiffs’ expert opined that soil and groundwater TCE contamination could have occurred at different times based on different events. (Id.) The Third Department affirmed the order denying defendants’ motion to dismiss since the defendants had not definitively shown that the pollution of the plaintiffs’ soil was an outgrowth, maturation or complication of plaintiffs’ well water contamination, occurring before the statutory period. (Id. at 815.)
In 2006, Judge Scheindlin considered the issue of the so-called two injury rule with respect to the claims of MTBE contaminating the wells of, inter alia, SCWA. That court held that
“[w]hile a site-by-site approach is undoubtedly more complicated, such an analysis is required given that [plaintiff] alleges injuries at ‘multiple locations, in multiple aquifers, and at different points in time.’ The question of when (and whether) each release caused the alleged injury of which [plaintiff] complains will require an analysis of factual circumstances specific to each release . . . and the location of the injury . . . and therefore must be determined *268 on a site-by-site basis.” (In re Methyl Tertiary Butyl Ether [MTBE] Prods., 475 F Supp 2d 286, 292 [SD NY 2006].)
In that case, as in the one at bar, the plaintiffs contended that releases were multiple and at separate times, each one constituting a separate injury for purposes of fixing the statute of limitations under CPLR 214-c. (Id. at 20.)
Conclusion
Applying the above to the case at bar, the court finds as follows. Whether SCWA has standing to bring claims with regard to those of its wells where the levels of PCE and TCE are below the MCL level constitutes an issue of fact for the same reasons set forth in the MTBE litigation. As in that case, SCWA has alleged that the defendants’ conduct in creating products and chemicals responsible for the release of contaminants in the groundwater, even where such results in contaminant levels below the MCL, constitutes a violation of the plaintiffs protected interests due to the alleged resulting monitoring, remediating and replacement costs asserted. To hold otherwise would allow the statutory standards to preempt common-law tort liability.
On the other hand, based on the clear language of the Court of Appeals in Jensen (supra), this case is clearly based, as the defendants assert, upon latent effects of exposure to underground contaminants and is governed by CPLR 214-c. The defendants have sustained their burden of demonstrating the lack of any material issue of fact on this issue, based on the applicable case law and SCWA has set forth no facts which would convince the court that this issue is other than one of law. Thus, under the applicable statute of limitations set forth in CPLR 214-c, injury occurred when SCWA knew or reasonably should have known of the contamination of its wells involved in this lawsuit. The continuing tort doctrine does not apply in such a case.
With regard to the applicability of the two injury rule, the court finds that the defendants have failed to make a prima facie showing, through the submission of evidence in admissible form, that the contamination of the remaining 159 wells was an “outgrowth, maturation or complication” of releases, discharges, leaks and/or disposals of PCE that occurred more than three years before the commencement of this action, and not, as SCWA alleges, caused by multiple releases, discharges, leaks *269 and/or disposals of PCE. Merely pointing to gaps in the opposing party’s proof is insufficient. (Healy v Damus, 88 AD3d 848 [2d Dept 2011].) The two injury rule may apply in this case and, as in the MTBE litigation, will ultimately require the plaintiff to prove, as a matter of fact, that there were separate and distinct releases of PCE and/or TCE causing damage to SCWA wells within the three-year period prior to commencement of this action. “Whether the violation of the regulatory standard which SCWA first discovered in 1991 was an ‘outgrowth, maturation or complication’ of the original contamination of the groundwater was a question of fact for the trial court” (see State of New York v Fermenta ASC Corp., 238 AD2d 400, 402-403 [2d Dept 1997], quoting Bimbo, supra). To hold otherwise would lead to the absurd result of essentially immunizing defendants from liability for further contamination caused by future releases, discharges, etc. of PCE.
In any event, even if defendants had met their initial burden, the court believes that SCWA, in opposition, has more than satisfied its obligation to raise issues of material fact precluding summary judgment. The affidavit of SCWA’s hydrologist posits more than mere conjecture. Due to the complexity of this issue, requiring, at a minimum, the findings of hydrologists, this matter should await the conclusion of discovery.
As set forth in the parties’ papers, there appears to be no dispute that PCE or TCE was discovered by SCWA at some level in 159 of its wells before or within the three-year period prior to this litigation. SCWA alleges, and such is accepted for purposes of this motion, that it has expended time and funds in monitoring and remediation efforts for which it seeks compensation from those entities it asserts caused the injury to its property. Accordingly, with regard to the subject 159 wells, the motion for summary judgment is denied. Defendants have not demonstrated as a matter of law either that injury did not occur with regard to wells in which contaminants were detected below the MCL nor that the “two injury” rule does not apply in this case. As set forth above, with regard to the second issue, even a shifting of the burden would not change the court’s holding due to the complex issues raised by plaintiff.